# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

v.                                                                             **CRIMINAL NO. 3:08-CR-77**
                                                                             **(BAILEY)**

**BARTON JOSEPH ADAMS, and**
**JOSEPHINE ARTILLAGA ADAMS,**

    **Defendants.**

## ORDER DENYING MOTION TO BIFURCATE

The above styled case is presently before the Court on defendant Barton Adams' Motion to Bifurcate Counts 1-10 of Second Superceding Indictment from Remaining Counts [Doc. 699]. In the motion, defendant asks that this Court bifurcate the trial of counts 1-10 from that of the remaining counts as defendant only wishes to testify as to the healthcare fraud counts. On February 25, 2011, the Court heard oral argument on the motion and took it under advisement. The Court has reviewed the motion, and the arguments of the parties, and now finds that the motion [Doc. 699] should be **DENIED**.

**I.    BACKGROUND**

On or about March 16, 2010, a Second Superceding Indictment was returned against the defendant Barton Adams consisting of one-hundred and sixty nine (169) separate counts as well as a forfeiture allegation. [Do. 409]. Count One of the Second Superceding Indictment, consisting of sixteen (16) enumerated paragraphs, purports to lay out the alleged "scheme" by which Dr. Adams allegedly billed Medicare and Medicaid for services which were either not rendered or were billed at a higher rate than was appropriate. Counts 2-10 of the Second Superceding Indictment all charge that Dr. Adams committed "Health Care Fraud" by obtaining money from Medicare and Medicaid for

"fraudulent" claims. Counts 11-169 charge Dr. Adams with various monetary related crimes including "Wire Fraud," "False Tax Return for Tax Year 2004," "Tax Evasion," and numerous "Money Laundering" charges.

Many of the charges in Counts 11-169 allege that the money involved in the transactions was obtained as a result of the alleged "unlawful activity" of Dr. Adams by engaging in health fraud as set forth in Counts 1-10 of the Second Superceding Indictment. Defendant now challenges the joinder of Counts 1-10 with Counts 11-169 on the grounds that to try all the counts together would unduly prejudice him, and that it is in the interest of judicial economy to try Counts 1-10 separately.

## II. DISCUSSION

In support of his motion, defendant argues that he would be unduly prejudiced if the healthcare fraud counts (Counts 1-10) were tried with the tax and money laundering counts (Counts 11-169). Specifically, defendant argues that because he wishes to take the stand and testify in his own defense *only* as to the healthcare fraud counts, defendant is concerned that in so doing: (1) he would open himself up to cross examination on all counts; and (2) the jury would make a negative inference based on the fact that defendant did not testify as to the other counts. In support of this argument, the defendant directs this Court to **Cross v. United States**, 335 F.2d 987, 989 (D.C. Cir. 1964). **Cross** held that denial of a severance was reversible error where a defendant wished to testify as to one of two joined offenses, and was thereby prejudiced in presenting his defense. *Id.*

While **Cross** is still good law, "[t]he court that decided **Cross** has subsequently narrowed the potential scope of that decision." **United States v. Jamar**, 561 F.2d 1103, 1108 (4th Cir. 1977). As the Fourth Circuit has recognized, "In **Baker v. United States**, 401 F.2d 958 (D.C.Cir. 1968), the Court indicated that **Cross** does not require a severance every time a defendant merely alleges that he wishes to offer limited testimony. Rather, a particularized showing must be made concerning the testimony the defendant wishes to give and his reasons for remaining silent on the joined counts, so that the court can make

an independent evaluation of whether the defendant will be prejudiced to an extent that outweighs the interests favoring joinder." *Jamar*, 561 F.2d at 1108. Further the Fourth Circuit directs that in deciding whether the defendant will be prejudiced to an extent that outweighs joinder, "[t]he trial court must weigh the inconvenience and expense to the government and witnesses of separate trials against the prejudice to the defendant inherent in a joint trial." *United States v. Larouche*, 896 F.2d 815, 831 (4th Cir. 1990). The trial court's "determination will not be disturbed unless the denial of severance deprives the movant a fair trial and results in a miscarriage of justice. The movant must show something more than merely a better chance of acquittal and must overcome the burden imposed by a stringent standard of review." *Larouche*, 896 F.2d at 831.

During argument, the Court asked counsel for a particularized showing of what the inherent prejudice would be should the defendant only testify as to Counts 1-10 on direct. Counsel indicated that in taking the stand the defendant would open himself up to cross examination on all the counts. The Court finds that this is not the case. If direct examination is limited to Counts 1-10, and defendant or his counsel do not broaden that scope, then the scope of cross examination would be limited to the healthcare counts. Further, should defendant or his counsel inadvertently broaden the scope of the examination, he can exercise his right to remain silent.

At argument, the Court further inquired of counsel for defendant if the scope of cross examination was limited, how defendant would be prejudiced by a joint trial. Counsel indicated that the fact that the defendant would remain silent as to the remaining counts on the stand, while testifying as to the healthcare fraud counts, would likely cause the jury to draw a negative inference. The Court then inquired how that possible inference would be any different that any inference the jury would draw from the defendant remaining silent as to the non-healthcare counts in a separate trial. Counsel argued that the prejudice would be greater because it would essentially be more noticeable that the defendant was only

remaining silent as to the non-healthcare fraud counts. The Court finds this argument unavailing.

It has long been a concern in the court system that jurors may draw a negative inference when a defendant chooses not to testify in his own defense. The Court, however, instructs the jury that such an inference is impermissible under the law. Defendant's argument here, that the impermissible inference would be 'stronger' in a joint trial where the defendant only testifies as to certain counts. while not totally devoid of merit, is insufficient to outweigh the "inconvenience and expense to the government and witnesses [should there be] separate trials." *Larouche*, 896 F.2d at 831.

Further, the Court finds defendant's argument that judicial economy would be served by bifurcating the counts unavailing. Defendant argues that were the defendant found innocent as to the first ten counts, that a trial as to the remaining counts would be unnecessary because there would be no underlying criminal act to support the money laundering counts. As the Government noted at oral argument, however, the Government need only prove a scheme to defraud–not the actual fraud itself–in order to prevail on the money laundering counts. Thus, the Court is faced with the prospect of trying the conduct of counts 1-10 in a 'first trial,' and then trying the same conduct as relevant conduct in a 'second trial.'

Additionally, the healthcare fraud counts include as witnesses many of defendant's patients. Thus, bifurcating Counts 1-10 would result in many patients being called to testify in two separate trials. The Court finds that the expense and inconvenience to the Government and the many potential witnesses in the above-styled case outweigh any possible prejudice the defendant might suffer as a result of all the counts being tried together. Additionally, the Court notes that "curative instructions to the jury by the district court go a long way in eliminating any prejudice resulting from the spillover effects of joinder." *Larouche*, 896 F.2d at 831 (citing **United States v. Porter**, 821 F.2d 968, 972 (4th Cir. 1987), *cert denied*, 485 U.S. 934 (1988)).

4

## CONCLUSION

Accordingly, based on the reasoning stated above, the Court **ORDERS** that defendant Barton Adams' Motion to Bifurcate [Doc. 699] should be, and hereby is, **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit a copy of this order to all counsel of record herein.

**DATED:** March 7, 2011

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE